```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TENNESSEE
                           WESTERN DIVISION
```
_____

```
GERALD YANCY,                    )
                                 )
     Plaintiff,                  )
                                 )
v.                               )
                                 )      No. 2:09-cv-02207-JPM-egb
BARR-NUNN TRANSPORTATION         )
INC., and CONCENTRA MEDICAL      )
CENTERS,                         )
                                 )
     Defendants.                 )
```
_____

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
_____

Before the Court is Defendant Barr-Nunn Transportation Inc.'s Motion for Summary Judgment (Docket Entry ("D.E.") 19), and Defendant Concentra Medical Centers's Motion for Summary Judgment (D.E. 20), both filed February 8, 2010.  Plaintiff filed responses in opposition to the motions on March 15, 2010. (D.E. 27 & 28.)  Defendant Concentra Medical Centers filed a reply in support of its motion on March 25, 2010.  (D.E. 32.) The Court held a telephonic hearing on the motion on April 1, 2010.  For the following reasons, Defendants' motions are GRANTED.

**I.   Background**

Defendant Barr-Nunn Transportation Inc. ("Barr-Nunn") is a corporation that provides trucking and transportation services throughout the United States.  (Def. Barr-Nunn's Statement of

Material Facts in Supp. of Mot. for Summ. J. ("Barr-Nunn Statement of Facts") (D.E. 19-2) ¶ 2.)  In September 2007, Barr-Nunn hired Plaintiff as a truck driver.  (Yancy Aff. (D.E. 28-1) ¶ 2.)  Plaintiff's duties with Barr-Nunn consisted of "driving over[-]the[-]road 18[-]wheel trucks across country for the purposes of delivering freight."  (Id. ¶ 3.)

In accordance with federal regulations,[1] Barr-Nunn maintains a Drug and Alcohol Workplace Policy which requires all of its drivers to submit to random drug and alcohol testing.  (Barr-Nunn Statement of Facts ¶ 6.)  Pursuant to this policy, Plaintiff signed a "controlled substance testing consent form" in which he acknowledged that he understood and consented to the random drug testing procedures set forth in the Drug and Alcohol Workplace Policy handbook.  (Id. ¶ 9; Yancy Dep. at 40; see also Def. Barr-Nunn's Mot. for Summ. J. Ex. 4 (Barr-Nunn Transportation, Inc.'s Drug and Alcohol Workplace Policy) (D.E. 19-1 at 21-30).)

On August 6, 2008, Plaintiff was in route to deliver a load of freight to a Wal-Mart store in Georgia.  (Yancy Aff. ¶¶ 5 & 10.)  When Plaintiff was near the Wisconsin-Illinois border, Barr-Nunn directed Plaintiff to submit to a random drug test at Defendant Concentra Medical Centers's ("Concentra") Chicago

---

[1]    See 49 C.F.R. § 382.101 et seq.

2

office, located at 4201 W. 36th Street, Chicago, Illinois. (Id. ¶¶ 5-6.) Plaintiff agreed to the test and arrived at Concentra's Chicago facility within an hour of receiving the call from Bar-Nunn. (Id. ¶ 6; Yancy Dep. at 66.)

Upon arriving at Concentra's Chicago facility, Plaintiff notified the nurse at the front desk that he worked for Barr-Nunn and that he was there "to take a drug test." (Yancy Aff. ¶¶ 6-7.) The nurse took Plaintiff's driver's license, made copies, and directed Plaintiff to fill out the required documentation. (Yancy Dep. at 67.) After waiting approximately an hour, Plaintiff was called to the back of the facility to provide a urine sample.[2] (Id.)

Plaintiff entered a bathroom in the rear of the facility and urinated into a receptacle provided by the nurse. (Yancy Dep. at 136.) Upon exiting the bathroom, Plaintiff handed the receptacle containing his urine sample to a female nurse. (Yancy Dep. at 136-37.) After performing a temperature test on the urine sample, the nurse poured the urine from the receptacle into two smaller tubes.[3] (Yancy Dep. at 137.) Plaintiff

---

[2] Plaintiff was initially ordered by the nurse to leave his cell phone on the counter outside of the bathroom. (Yancy Dep. at 68; Yancy Aff. ¶ 7.) Plaintiff refused to leave his cell phone on the counter and was ultimately allowed to bring his cell phone, keys, and checkbook into the bathroom. (Yancy Aff. ¶ 8.)

[3] Pursuant to Barr-Nunn's drug testing policy, an employee's urine sample is split into two specimens. (Barr-Nunn's Statement of Facts ¶ 13.) The first specimen is tested by Barr-Nunn's medical review officer. (Id.) If

testified that the nurse sealed the two tubes in his presence. (Id.) After Plaintiff placed his initials on both tubes, he was directed to leave the tubes on the counter outside the bathroom. (Id. at 137-38.) Plaintiff then exited Concentra's facility. (Id. at 138.)

On August 9, 2008, the medical review officer employed by Barr-Nunn notified Plaintiff that his first urine specimen tested positive for cocaine. (Yancy Aff. ¶ 10.) Pursuant to Barr-Nunn's drug testing policy, Plaintiff was given the option of having the split specimen tested. (Barr-Nunn's Statement of Facts ¶ 16.) Plaintiff elected to have the split specimen tested; Plaintiff's split specimen also tested positive for cocaine. (Yancy Aff. ¶ 10.)

On August 19, 2008, Barr-Nunn terminated Plaintiff's employment as a result of his positive drug test. (Barr-Nunn's Statement of Facts ¶ 19.) Plaintiff contends that since his termination, both Barr-Nunn and Concentra have "cast the Plaintiff in an unfavorable light with other prospective employers by telling them that the Plaintiff was terminated for drug use without attempts to ascertain the truth or falsity of the statement." (Compl. (D.E. 1) ¶ 18.)

---

the employee tests positive for a controlled substance, the employee has the
option of sending the "second or split specimen" to a different laboratory
chosen by the employee for a second analysis. (Id.)

On April 7, 2009, Plaintiff filed the instant lawsuit. (See generally Compl.) In his complaint, Plaintiff alleges that both Defendants are liable for negligence, defamation, and false light invasion of privacy. (Id. ¶¶ 12, 18-20.) Defendants move for summary judgment as to all claims.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**III. Analysis**

In their motions, both Barr-Nunn and Concentra contend that they are entitled to summary judgment as to Plaintiff's claims of negligence, defamation, and false light invasion of privacy. The Court will address each contention in turn.

    **A.  Negligence**

In order to establish a claim of negligence under Tennessee law, a plaintiff must prove: "(1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal,

cause." McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 894 (Tenn. 1996). No claim for negligence can succeed in the absence of any one of the elements. Haynes v. Hamilton County, 883 S.W.2d 606, 611-12 (Tenn. 1994) (citations omitted).

In their motions, Defendants contend that Plaintiff has failed to proffer sufficient evidence to create a question of fact as to whether some act or omission by either Defendant caused Plaintiff's drug screen to test positive for cocaine. Defendants therefore contend that they are entitled to summary judgment because Plaintiff has failed to prove the causation element of his claim. The Court agrees.

In his deposition, Plaintiff only asserts that he has never used cocaine; therefore, the specimen that tested positive for cocaine could not have been his specimen. (Yancy Dep. at 120.) Plaintiff, however, testified that (1) he urinated into a large receptacle, (2) he observed the nurse pour the urine from the receptacle into two smaller tubes, (3) he confirmed that the nurse sealed the tubes in his presence, (4) he initialed the seals on both tubes, (5) he placed the tubes on the counter in the back of the facility, and (6) that no other specimen tubes were on the counter prior to leaving the facility.[4] (Yancy Dep.

---

[4] Plaintiff also swore in an affidavit that when he left Concentra's facility his specimen was "not tagged or bagged." (Yancy Aff. ¶ 9.) But Plaintiff's affidavit was submitted only after his deposition was taken and after Defendant filed its summary judgment motion. The Court finds that such

7

at 136-138.)  In light of Plaintiff's undisputed testimony, the Court finds his assertion that "[he] do[es] not do drugs" is not sufficient proof to create a question of fact as to whether Defendants negligently administered the drug test.

The Court also finds that Plaintiff has failed to submit evidence sufficient to support a claim of negligent chain of custody.  Defendant Concentra submitted the Federal Drug Testing Custody and Control Form ("Custody Form") which evinces that Plaintiff's urine sample traveled through a properly certified chain of custody.  (See Def. Concentra's Reply in Supp. of Mot. for Summ. J. Ex. A (D.E. 32-1).)  Because Plaintiff has not submitted evidence challenging the chain of custody procedures as established by the Custody Form, Plaintiff's claim of negligent chain of custody fails as a matter of law.  Cf. Saulsberry v. Lab. Corp. of Am., No. W2000-02826-COA-R3-CV, 2001 WL 1906279 (Tenn. Ct. App. Aug. 6, 2001) (involving a nearly-identical factual background to the case at bar; the Tennessee Court of Appeals found that the failure of the specimen collector to sign the specimen custody form at "Step 5" was sufficient proof to preclude summary judgment in favor of the

---

statements do not create a genuine issue of material fact at the summary judgment stage.  See Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony.") (citation omitted).

8

defendant laboratory).

Without some evidence that Defendants negligently administered the drug test or that Defendants negligently breached the chain of custody procedures, there is no proof from which a trier of fact could infer that the specimen tested was not Plaintiff's specimen.  Defendants' Motions for Summary Judgment are therefore GRANTED as to Plaintiff's negligence claim.

### B. Defamation/False Light[5]

To assert a prima facie case of defamation in Tennessee, the plaintiff must establish that (1) a party published a statement, (2) with knowledge that the statement is false and defaming to the other, or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.  <u>Sullivan v. Baptist Mem'l Hosp.</u>, 995 S.W.2d 569, 571 (Tenn. 1999).  A plaintiff may recover for the tort of false light invasion of privacy where a defendant "'gives publicity to a matter concerning another that places the other before the public in a false light' such that

---

[5]   In his response to Defendant Concentra's Motion for Summary Judgment, Plaintiff did not respond to Concentra's assertion that it is entitled to summary judgment as to Plaintiff's defamation and false light claims.  Moreover, at the telephonic hearing, Plaintiff's counsel indicated that it did not intend to pursue a defamation or false light claim against Defendant Concentra.  Accordingly, to the extent that Plaintiff's Complaint can be construed to assert defamation or false light claims against Defendant Concentra, Concentra's Motion for Summary Judgment is GRANTED.

9

(1) 'the false light into which the other is placed would be highly offensive to a reasonable person' and (2) 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'"  Milligan v. United States, 664 F. Supp. 2d 1020, 1038-39 (M.D. Tenn. 2009) (quoting West v. Media Gen. Convergence, Inc., 53 S.W.3d 640, 643-44 (Tenn. 2001)).  Barr-Nunn asserts that Plaintiff's defamation and false light claims fail as a matter of law because (1) the test results at issue were not "published," (2) the test results were factually true, and (3) Barr-Nunn is conditionally privileged to release Plaintiff's test results to Plaintiff's prospective employers.  Because the Court finds that Barr-Nunn did not publish the test results, the Court declines to address Barr-Nunn's remaining grounds for summary judgment.

Under Tennessee law, publication is an essential element of a defamation or false light invasion of privacy action.  West, 53 S.W.3d at 643-44 (false light); Applewhite v. Memphis State Univ., 495 S.W.2d 190, 192-93 (Tenn. 1973) (defamation).  In the instant case, Plaintiff has not submitted any evidence that Barr-Nunn disclosed the results from Plaintiff's drug test to any prospective employers.[6]  To the contrary, Plaintiff admitted

---

[6]   In his response to Barr-Nunn's Motion for Summary Judgment, Plaintiff asserts that "Barr[-]Nunn, by and through its agent, Aimee Hanson[,]

10

in his deposition that he informed each of his prospective employers about his termination due to the positive drug test. (Yancy Dep. at 97-98.)  Plaintiff has therefore failed to create an issue of fact regarding the publication of his drug test. Barr-Nunn's Motion for Summary is GRANTED as it relates to Plaintiff's defamation and false light invasion of privacy claims.

**IV. Conclusion**

For the foregoing reasons, Defendant Barr-Nunn's Motion for Summary Judgment and Defendant Concentra's Motion for Summary Judgment are GRANTED.

SO ORDERED this 30th day of April, 2010.

/s/ JON PHIPPS MCCALLA
CHIEF UNITED STATES DISTRICT JUDGE

---

presented the Plaintiff in a false light by averring to the Iowa Department of Employment Security that Plaintiff was positive on his drug screen." (Pl.'s Resp. to Def. Barr-Nunn's Mot. for Summ. J. at 11.)  Plaintiff, however, cites no documentation or sworn testimony that supports this claim. See Nix v. O'Malley, 160 F.3d 343, 347 (6th Cir. 1998) (unsworn allegations in a brief are insufficient to create a factual dispute on a motion for summary judgment).

11